[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a denial of a two lot resubdivision of a parcel of land containing 0.83 acres on Shortell Drive in Ansonia. The appeal raises the question to what extent a CT Page 7093 previously approved subdivision lot is exempt from changes in subdivision and zoning regulations where the lot is resubdivided.
The property involved in this appeal is Lot 9 on a subdivision map containing 20 lots which were approved by the Ansonia Planning Commission on September 28, 1981. Most of the lots contained 12,500 square feet, the minimum lot area allowed by the zoning regulations for the zone where the property was located. Lot 9 contained 36,085 square feet. The plaintiff has owned the property since that time and has constructed a single family residence on the southeasterly portion of the lot and a driveway along the southerly boundary to Shortell Drive, a public highway. On December 8, 1990 the plaintiff obtained a certificate of zoning compliance from the zoning enforcement officer of Ansonia for the existing lot and residence. An application was filed to resubdivide the lot into two parcels consisting of an unimproved lot of 13,532 square feet (Lot 21) and a rear lot containing 22,514 square feet and the existing house and driveway. A public hearing was held on the resubdivision application on December 17, 1990 and continued until January 29, 1991 with the consent of the applicant. Between the two meetings members of the Ansonia Planning Zoning Commission (hereafter called "the Commission") and its staff inspected the site and the applicant made some changes in the plans to meet concerns expressed at the public hearing of December 17, 1990. At its meeting of February 25, 1991 the Commission denied the two lot resubdivision for three reasons. Notice of the Commission's decision was published March 6, 1991 and the plaintiff brought this appeal within 15 days from that date as required by8-8(b) and 8-28 of the General Statutes.
The plaintiff is the owner of the property and the applicant to the Commission. The plaintiff has proven aggrievement since it is specially and injuriously affected by the Commission's decision. Winchester Woods Associates v. Planning and Zoning Commission,219 Conn. 303, 308.
While the Commission is a combined planning and zoning commission, when exercising its function of approving or disapproving a subdivision plan, it acts in an administrative capacity. R K Development Corporation v. Norwalk, 156 Conn. 369,376; Beach v. Planning and Zoning Commission, 141 Conn. 79, 84; Reed v. Planning and Zoning Commission, 208 Conn. 431, 433. Where property has previously been subdivided with the approval of the planning commission, any change in the subdivision map which diminishes the size of any lot shown on the map and creates an additional building lot is a resubdivision. Section 8-18
Connecticut General Statutes. For purposes of the subdivision statutes, the definition of "subdivision" includes resubdivision. Section 8-18 C.G.S. When passing upon a subdivision application, the commission is controlled by the regulations which it has CT Page 7094 previously adopted. Westport v. Norwalk, 167 Conn. 151, 155, 157; Beach v. Planning and Zoning Commission, supra, 83. A planning commission cannot disapprove a subdivision application for a reason or based upon a standard not contained in its existing regulations. R K Development Corporation v. Norwalk, supra, 377; Beach v. Planning and Zoning Commission, supra, 85. If the application meets the existing subdivision regulations the commission must approve it. Reed v. Planning and Zoning Commission, supra, 433; Beach v. Planning and Zoning Commission, supra, 84. If it does not conform to the regulations the subdivision plan may be disapproved. Reed v. Planning and Zoning Commission, supra, 433; Forest Construction Co. v. Planning and Zoning Commission, 155 Conn. 669,674-75; Westport v. Norwalk, supra, 157, 158.
In an appeal from the denial of a subdivision a question for the court is whether any of the reasons assigned by the planning commission for denial of the application were valid. R K Development Corporation v. Norwalk, supra, 377; Blakeman v. Planning Commission, 152 Conn. 303, 306. The court determines whether any of the reasons given for denial of the application are supported by the express language of specific sections of the subdivision regulations and whether the denial is reasonably supported by evidence in the record. Westport v. Norwalk, supra, 161; Nicoli v. Planning and Zoning Commission, 171 Conn. 89, 94,95; Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 56,57. The commission must be upheld if any reason given for denial of the subdivision is valid. Blakeman v. Planning Commission, supra, 306; Krawski v. Planning and Zoning Commission, 21 Conn. App. 667,674.
A planning commission cannot impose stricter requirements on lot size, shape, density, setbacks, uses and similar aspects of subdivision lots than the requirements contained in the town's zoning regulations. Cristofaro v. Burlington, 217 Conn. 103, 106
108. Section 8-26 of the General Statutes expressly provides that a planning commission cannot approve any subdivision or resubdivision which conflicts with applicable zoning regulations. Krawski v. Planning and Zoning Commission, supra, 671.
In this case the resubdivision of Lot 9 into Lots 9 and 21 was denied for three reasons, based upon one provision in the subdivision regulations and one provision in the zoning regulations. The Commission was concerned with the driveway grade, and runoff from the driveway towards Shortell Drive. Some of the Commission members visited the site, and could properly consider facts which they learned by personal observation of the property and its surrounding area. Forest Construction Co. v. Planning and Zoning Commission, supra, 675. The record also adequately supports the factual conclusions of the Commission that there are drainage problems on the site and that the driveway grade exceeds 15% in CT Page 7095 some places. Even where there is conflicting evidence on the record, the court cannot substitute its judgment for the factual conclusions of the commission. Westfort v. Norwalk, supra, 161; Gagnon v. Municipal Planning Commission, supra, 57. The three reasons for denial can be summarized as follows: (1) the driveway to the proposed Lot 9 exceeds the 12% standard of 3.3.3 of the subdivision regulations because part of it has a 15% grade, and there is no apparent remedy by relocating the driveway; (2) there is inadequate provision for drainage, and runoff from the steep driveway will discharge onto Shortell Drive; and (3) a rear lot would be established without screening of the driveway as required by 325.2.3 of the zoning regulations. The plaintiff is correct that the third reason for denial was improper since the regulation only requires screening in some cases from the rear yards and not the side yards of abutting lots, and the property line involved here was the side line along the access strip. FBIC claims that the other two reasons for denial were based upon regulations that cannot be applied to its resubdivision because the regulations were passed after approval of the original subdivision Lot 9 in 1981 and because the features objected to, the driveway grade and storm water drainage along the driveway, are incidental to the existing house on the property and are not changed by division of the lot into two parcels. That argument is superficially appealing, but breaks down under analysis.
The version of the Ansonia subdivision regulations which was in effect when their subdivision application was filed provides in 3.3.3 that each subdivision lot must have access "by means of a driveway having a grade no greater than 12% in residential areas." This provision was adopted in 1983 and did not exist when the original 20 lot subdivision was approved in 1981. The zoning regulations do not contain any specific provision for driveway grades, but 325.2.3 allows the planning commission when approving a rear lot to specify, among other things,
 "the grade and alignment of the access driveway, storm drainage provisions, and may also require that any driveway extending from the street line to the building site on the lot be screened from the rear yards of abutting lots, where it finds the same to be necessary for public safety or for the protection of the suburban residential area."
While the record shows that 3.3.3 of the subdivision regulations was adopted after 1981, it does not disclose whether or not 325 of the zoning regulations concerning rear lots and the provision in 325.2.3 of the zoning regulations existed when the original subdivision was approved. The plaintiff's position is that 8-26a, 8-28a and 8-28b of the General Statutes exempt the subdivision lots here from changes in zoning or subdivision CT Page 7096 regulations subsequent the original to approval of Lot 9 in 1981. First of all, 8-28a and 8-28b do not concern the issue involved in this case, but merely protect a subdivision application which is finally approved by the planning commission from changes in the zoning regulations, the boundaries of zoning districts and subdivision regulations which occur while the application is pending before the planning commission. Section 8-26a(a) provides in part that "when a change in the subdivision regulations is adopted by the planning commission of any town . . . no subdivision plan which has been approved, prior to the effective date of such change, by such planning commission . . . and filed or recorded with the town clerk, shall be required to conform to such change." The purpose of this provision is to exempt approved subdivision lots shown on recorded maps from later changes in the subdivision regulations and further review by the planning commission. As long as the plaintiff maintains Lot 9 as shown on the 1981 map, the 1983 amendment establishing a maximum driveway grade of 12% cannot apply to the lot. The proposal before the Commission was to establish two new and different lots out of the former Lot 9. Neither of the two proposed lots are shown as separate lots on the recorded 1981 map. The two lot resubdivision is subsequent and not prior to the change in the subdivision regulations. As a result, the lots are not exempt from a driveway grade provision in the subdivision regulations. This is so even though there is an existing driveway on Lot 9 and no changes are proposed in its grade or location. Adopting the plaintiff's position would mean that all existing features on property contained in a parcel previously approved as part of a subdivision would be forever exempt from any later regulation, and that a property owner could create an exemption from all subsequent divisions of property, no matter how extensive, by obtaining some initial subdivision approval. This was clearly not the intent of 8-26a(a). That is also apparent from subsection (b) of the statute which concerns changes in the zoning regulations affecting lot area or similar requirements for building lots. It provides in part that "when a change is adopted in the zoning regulations or boundaries of zoning districts of any town . . . no lot or lots shown on a subdivision plan for residential property which has been approved, prior to the effective date of such change by the planning commission of such town . . . and filed or recorded with the town clerk, shall be required to conform to such change." (Emphasis added). Whether or not the zoning regulations concerning rear lots were passed prior to 1981, they can be applied to the two lots on the proposed resubdivision, even though the original Lot 9 would be exempt under 8-26a(b) from post-1981 changes in the zoning regulations The statute protects lots shown on the subdivision map, not lots which are subsequently created from them.[1] If the plaintiff's argument is accepted, "a property owner, by the process of map filing, could completely foreclose a zoning authority from ever taking any action with respect to the land included in the map, regardless of how urgent CT Page 7097 the need for regulation might be." Corsino v. Grover, 148 Conn. 299,314.
Section 8-28a protects developers from changes in the zoning and subdivision regulations for an approved subdivision. It does not apply to subdivision plans that are not approved by the commission, which includes the two lot proposed resubdivision here. Id. Moreover, the statute only applies to subsequent amendments to subdivision or zoning regulations enacted by zoning and planning commissions, but not to changes in lots which have occurred due to the actions of the landowners themselves. Iannucci v. Zoning Board of Appeals, 25 Conn. App. 85, 91.
The Commission was allowed to deny the subdivision when it concluded that it was not possible to lay out two lots without a violation of the 12% maximum grade requirement.[2]
Section 3.3.5 of the subdivision regulations provides that subdivision lots must be graded and drained to be usable for typical building development and "to prevent drainage problems on adjacent streets and lots within and outside the subdivision." This provision supports the second reason for denying the application for the two proposed lots since there is some evidence on drainage problems in the record, even though it does not prevent use of existing Lot 9 if it is not subdivided because of 8-26a(b) of the General Statutes.
The Commission gave two valid reasons for denying the resubdivision application The reasons are supported by the record and are based upon applicable subdivision and zoning regulations
The appeal is dismissed.
Robert A. Fuller, Judge.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 7107